IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JAMAL JONES, M43295, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17−cv−162−MJR |
| | ) | |
| JOHN BALDWIN, | ) | |
| CHRISTINE BROWN, | ) | |
| JACQUELINE LASHBROOK, | ) | |
| LARUE LOVE, | ) | |
| JANE DOE, | ) | |
| WEXFORD MEDICAL SOURCES, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Jamal Jones, an inmate a Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In his Complaint, Plaintiff claims the defendants have been deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. (Doc. 1). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>   (1) is frivolous, malicious, or fails to state a claim on which
> relief may be granted; or
>   (2) seeks monetary relief from a defendant who is immune
> from such relief.

1

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to allow this case to proceed past the threshold stage.

## **The Complaint**

In his Complaint (Doc. 1), Plaintiff makes the following allegations: on October 25, 2016, Plaintiff was kicked in the face, causing severe injuries to his eye sockets. (Doc. 1, p. 6). He began to experience vision loss. *Id.* He was taken to the Health Care Unit ("HCU") where he was given a "minimal" examination by Defendant Jane Doe. *Id.* When Plaintiff complained to Doe of "severe headaches," she told him to "stop bitching and crying like a baby." *Id.* She also refused to take notes regarding his complaints. *Id.* Doe told Plaintiff that he would not receive an x-ray because there was "no visible reason" to have one taken. (Doc. 1, p. 7). Plaintiff requested ice for his injury to relieve the swelling, but it was refused. *Id.* Plaintiff was instead given a low dose of Tylenol, and later Ibuprofen. *Id.*

Because Plaintiff was sent back to his cell after his first visit to the HCU after his injury without having been given an x-ray, the fracture in his face began to heal unevenly, leaving

Plaintiff's face disfigured. *Id.* Both of Plaintiff's eyes were black, and one of them was shut completely. *Id.* Even now, Plaintiff's eyes "show a dark shadow to them." *Id.* The Tylenol and Ibuprofen Plaintiff was given did not stop or slow the pain Plaintiff was experiencing – which Plaintiff classifies as a 10 on a scale of 1 to 10. *Id.* Plaintiff visited the HCU several times, only to be rushed out without sufficient care. *Id.* "For a very long time, [Plaintiff] was denied an x-ray by [Defendant Christine] Brown." *Id.* "In fact, Brown, Lashbrook, Love, and Baldwin instructed staff to not even consider treating such an 'expensive procedure,'" as is evidenced by a memorandum in the HCU with a list of over a dozen treatments and conditions that Wexford instructs its employees not to provide and/or treat, as "'expensive' care is not Wexford's obligation." *Id.*

Plaintiff "still has periods of 10-12 hours of severe headaches." *Id.* In fact, once when Plaintiff was trying to tie his shoes, he became so dizzy he almost fell over. *Id.* Plaintiff believes he needs an MRI, but MRIs are listed on the memorandum as a service that Wexford does not allow. *Id.* Plaintiff has instead suffered from daily headaches and severe depression. *Id.* Plaintiff sent a letter to Baldwin about this "expensive care" memo of Wexford's, but it went unanswered. (Doc. 1, p. 8). Plaintiff also filed an emergency grievance, which was received by the grievance officer on November 15, 2016 and forwarded to Baldwin on December 1, 2016. *Id.* This grievance was denied. *Id.*

On November 3, 2016, Plaintiff was ready to have x-rays taken, but the corrections officer on his wing told him his pass had been cancelled. *Id.* Plaintiff claims "[e]very cry out he's sent to Lashbrook, Love, Brown, and Baldwin went unanswered except" his emergency grievance that Baldwin expedited as an emergency but ultimately denied. (Doc. 1, p. 8); (Doc. 1-1, pp. 1-4). Notably, the emergency grievance response from Debbie Knauer of the

Administrative Review Board and Baldwin indicates that Plaintiff "was to come to x-ray November 3, 2016 but chose to go to commissary" and Plaintiff's "facial bones x-rayed [*sic*] on November 9, 2016." (Doc. 1-1, p. 4).

Plaintiff claims he "suffers from severe 10-12 hour headaches, severe vision loss, severe depression, neck pain, and other mental injuries[.]" (Doc. 1, p. 8). Plaintiff seeks monetary damages from the defendants. (Doc. 1, p. 10).

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into 3 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

> **Count 1 –** Doe and Brown showed deliberate indifference to Plaintiff's serious medical needs involving injuries to his face and pain associated therewith by failing to provide him with effective treatment in violation of the Eighth Amendment.
>
> **Count 2 –** Baldwin, Lashbrook, Brown, and Love showed deliberate indifference to Plaintiff's serious medical needs involving injuries to his face and pain associated therewith in violation of the Eighth Amendment by failing to take action to ensure Plaintiff received adequate care when they received grievances and/or complaints regarding his lack of treatment.
>
> **Count 3 –** Defendants created and perpetuated a policy at Pinckneyville favoring inexpensive medical care over effective medical care in violation of the Eighth Amendment.

As discussed in more detail below, Counts 1 and 3 will be allowed to proceed past threshold. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

## Count 1 – Deliberate Indifference to Medical Needs

A prisoner raising a claim for deliberate indifference to the prisoner's serious medical

needs must satisfy two requirements. The first requirement compels the prisoner to satisfy an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious[.]'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a medical condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997).

The second requirement involves a subjective standard: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that amounts to "'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 297). Liability under the deliberate-indifference standard requires more than negligence, gross negligence or even recklessness; rather, it is satisfied only by conduct that approaches intentional wrongdoing, *i.e.*, "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

Plaintiff has described an adequately serious condition with respect to his face injury, and the pain and suffering he has endured from it, to meet the objective prong of the medical indifference standard. Plaintiff also alleges that Doe more or less downplayed his injury when he came to the HCU after sustaining it, despite the visible severity of it, and even refused to give Plaintiff ice, much less an x-ray. Plaintiff also claims Doe gave Plaintiff's injury only a minimal inspection and told him to stop complaining. Brown also allegedly specifically denied Plaintiff an x-ray for a long period of time. At this early stage, these allegations satisfy the subjective

5

component of the deliberate indifference standard.

Count 1 against Doe and Brown will therefore be allowed to proceed.

### Count 2 – Grievance Officials

It is well established that "[f]or constitutional violations under § 1983 ... a government official is only liable for his or her own misconduct." *E.g.*, *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. June 5, 2015). "This means that to recover damages against a prison official acting in a supervisory role, a § 1983 plaintiff may not rely on a theory of *respondeat superior* and must instead allege that the defendant, through his or her own conduct, has violated the Constitution." *Perez v. Fenoglio,* 792 F.3d 768, 781 (7th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "An inmate's correspondence to a prison administrator may . . . establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Perez*, 792 F.3d at 781-82 (citing *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996)) ("[A] prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition."). "In other words, prisoner requests for relief that fall on 'deaf ears' may evidence deliberate indifference." *Perez*, 792 F.3d at 782.

Plaintiff has alleged that he somehow informed many of the defendants about his medical issues. He claims that "every cry out" he sent to Baldwin, Lashbrook, Brown, and Love went unanswered. He does not provide any information as to what these "cry outs" may have consisted of, or how many there may have been, or whether they even reached any of the defendants, other than his having attached to the Complaint a single grievance and the response

6

thereto to support his claim against Baldwin. In fact, it appears that Plaintiff's grievance was given emergency expedited review by Baldwin, and after an investigation was conducted into the situation, the grievance was denied as it was discovered that Plaintiff received an x-ray of his facial bones, which was the "medical treatment deemed necessary by facility medical staff." (Doc. 1-1, p. 4). This x-ray appears to have taken place soon after Plaintiff submitted the grievance but before it was reviewed by the grievance officer or Baldwin. Plaintiff therefore cannot claim that Baldwin ignored his complaint or that his request for relief from Baldwin fell "on deaf ears." *See Perez*, 792 F.3d at 782. On the contrary, it appears that Plaintiff's grievance to Baldwin inspired Baldwin to act upon and investigate Plaintiff's complaints.

Baldwin's apparent action in response to Plaintiff's grievance, and reliance on his medical staff's judgment once he conducted an investigation into Plaintiff's care, belies Plaintiff's allegation that Baldwin should be held liable for his lack of medical care based on the grievance he sent to him. *See Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) ("Non-medical defendants . . . can rely on the expertise of medical personnel."). Further, given the complete lack of information regarding what, if any, complaints Plaintiff might have sent or made to Lashbrook, Brown, and Love, this Court does not consider Plaintiff to have met the relevant pleading standard as to these defendants with respect to Count 2. Count 2 will therefore be dismissed without prejudice.

### Count 3 – Medical Care Policy

Plaintiff cannot rely on a theory of *respondeat superior*, or supervisory liability, when bringing a claim under § 1983 against Wexford, a private corporation that provides medical staffing and services in IDOC facilities. *Shields v. Illinois Dept. of Corr.*, 746 F.3d 782 (7th Cir. 2014). *See also Iqbal*, 556 U.S. at 676. A private corporation will generally only be held liable

under § 1983 for an unconstitutional policy or custom that results in a constitutional deprivation. *Perez*, 792 F.3d at 780 (citing *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2014)). *See Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982). Plaintiff points to Wexford's policy of denying all costly forms of testing and treatment, regardless of need, as the driving force behind the denial of proper medical care (including an MRI) for his face injury. Count 3 shall receive further review against Wexford, based on this policy.

Plaintiff further alleges that Baldwin, Brown, Lashbrook, and Love are liable for this policy because they "instructed staff to not even consider treating . . . 'expensive' procedure[s] . . . . as the 'expensive' care is not Wexford's obligation." (Doc. 1, p. 7). Plaintiff also allegedly sent a letter to Baldwin complaining about the policy. These allegations are enough, at this stage, to state a claim against Baldwin, Brown, Lashbrook, and Love for perpetuating a cost-over-efficacy healthcare policy at Pinckneyville.

Count 3 shall therefore proceed against Wexford, Baldwin, Brown, Lashbrook, and Love. Plaintiff has failed to provide sufficient information to implicate Doe in this count, so she will be dismissed from Count 3 without prejudice.

**Identification of Unknown Defendants**

Plaintiff shall be allowed to proceed with Count 1 against Doe. However, this defendant must be identified with particularity before service of the Complaint can be made on her. Where a prisoner's Complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, Lashbrook, the warden of Pinckneyville, is already named as a

defendant and shall be responsible for responding to discovery aimed at identifying this unknown defendant. Guidelines for discovery will be set by the United States Magistrate Judge. Once the name of Doe is discovered, Plaintiff shall file a motion to substitute the newly identified defendant in place of the generic designation in the case caption and throughout the Complaint.

## Pending Motions

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 3), which is **REFERRED** to United States Magistrate Judge Stephen C. Williams for a decision.

Plaintiff's Motion for Service of Process at Government Expense (Doc. 4) is **DENIED** as moot. Waivers of service of summons will be issued and served on the remaining defendants as ordered below. Plaintiff is advised that it is not necessary for a litigant proceeding *in forma pauperis* to file a motion requesting service of process by the United States Marshal Service or other process server. The Clerk will issue summons and the Court will direct service for any Complaint that passes preliminary review.

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCEED** against **DOE** and **BROWN**.

**IT IS FURTHER ORDERED** that **COUNT 2** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNT 3** shall **PROCEED** against **WEXFORD**, **BALDWIN**, **LASHBROOK**, **BROWN**, and **LOVE**. **COUNT 3** is **DISMISSED** without prejudice as against **DOE**.

With respect to **COUNTS 1** and **3**, the Clerk of the Court shall prepare for defendants

**BALDWIN, LASHBROOK, WEXFORD, LOVE, BROWN, and DOE** (once identified) (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on **DOE** until such time as Plaintiff has identified her by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the name and service address for this individual.

Plaintiff shall serve upon defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to

include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings, including a decision on Plaintiff's Motion for Recruitment of Counsel (Doc. 3) and a plan for discovery aimed at identifying the unknown defendant with particularity. Further, this entire matter shall be **REFERRED** to **United States Magistrate Judge Williams** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral*.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**
**DATED: June 13, 2017**

s/ Michael J. Reagan

**Chief Judge**
**United States District Court**